**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DORIS OSTROM, as Legal Guardian of
EDWARD OSTROM, a Legally
Incapacitated Individual,

         Plaintiff,                          CASE NO. 06-CV-12041

-vs-                                  PAUL D. BORMAN
                                  UNITED STATES DISTRICT JUDGE

MANORCARE HEALTH SERVICES,      STEVEN D. PEPE
Inc., d/b/a ARDEN COURTS OF        UNITED STATES MAGISTRATE JUDGE
LIVONIA,

         Defendant.

_____/

**OPINION AND ORDER**
**(1) REVERSING THE MAGISTRATE JUDGE'S ORDER DENYING PLAINTIFF'S**
**MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT;**
**(2) GRANTING PLAINTIFF'S MOTION TO FILE AN AMENDED COMPLAINT;**
**AND (3) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

      Before the Court are: (1) Defendant's Motion for Summary Judgment (Docket No. 5); (2)

the Magistrate Judge's October 20, 2006 Order Denying Plaintiff's Motion for Leave for File an

Amended Complaint (Docket No. 27); and (3) Plaintiff's Objections to the Magistrate Judge's

October 20, 2006 Order (Docket No. 28). The Court held a motion hearing on January 4, 2007.

      Having considered the entire record, and for the reasons that follow, the Court

REVERSES the Magistrate Judge's Order Denying Plaintiff's Leave to File an Amended

Complaint, GRANTS Plaintiff's Motion to File an Amended Complaint, and DENIES

Defendant's Motion for Summary Judgment.

1

I.     **BACKGROUND**

A.     **Plaintiff's Factual Allegations**

This case arises out of injuries sustained on March 22, 2004, by Plaintiff Edward Ostrom ("Plaintiff") while he was a resident at a nursing home administered by Defendant Manorcare Health Services, Inc. d/b/a/ Arden Court of Livonia ("Defendant"). On November 15, 2004, Plaintiff filed a Notice of Intent to pursue a medical malpractice action in state court, pursuant to MCL 600.2912b. Plaintiff filed his Complaint in Wayne County Circuit Court on March 22, 2006, exactly two (2) years after the incident. Defendant removed the case to federal court on the basis of diversity of citizenship on May 3, 2006.

Plaintiff was diagnosed with Alzheimer's disease and was admitted to Defendant's Livonia, Michigan facility on March 8, 2004. (Am. Compl. ¶ 5). On the evening of March 22, 2004, Plaintiff exited the nursing home building through an unlocked door into a courtyard. (Am. Compl. ¶¶ 6-7). As Plaintiff proceeded towards the courtyard door, Defendant's staff members began to chase Plaintiff. In the courtyard, Plaintiff tripped over a light post protruding from the ground, suffering injuries. (Am. Compl. ¶ 8). By the time the staff members arrived at the scene, Plaintiff was found unresponsive on the cement and bleeding from his head. (Am. Compl. ¶ 9). Plaintiff was taken to a hospital, where he was found to have sustained a severe head injury. (Am. Compl. ¶ 10). Plaintiff remained in the hospital for several weeks, requiring the insertion of a feeding tube. (Am. Compl. ¶ 11). After his release from the hospital, Plaintiff was transferred to a long-term care facility, where he has remained without improvement. (Am. Compl. ¶ 12).

2

Plaintiff now asserts a single count of ordinary negligence against Defendant. In his original Complaint, Plaintiff claims that Defendant failed to provide him a proper standard of care by failing to (1) perform a risk assessment of Plaintiff's known propensity for falls, wandering, and elopement; (2) implement a detailed plan of care in regard to the same; and (3) provide adequate facilities, services, and staff needed to carry out the plan of care and to assure his safety.

### B.     Procedural

Defendant filed its Motion for Summary Judgment on June 14, 2006, claiming that (1) Plaintiff's claims sound in medical malpractice rather than ordinary negligence; (2) Plaintiff failed to file an Affidavit of Meritorious Claim with his Complaint as required by Michigan law in a medical malpractice case; (3) in the alternative, the Court should strike the portions of the Complaint that in reality assert medical malpractice claims as opposed to ordinary negligence; and (4) Plaintiff's claim that Defendant "failed to provide adequate facilities, services, and staff to assure the safety of Plaintiff" is a strict liability claim. (Docket No. 5).

On July 18, 2006, Plaintiff filed a Motion to Leave to File an Amended Complaint. (Docket No. 11). In support of its motion, Plaintiff stated that discovery was in its initial stages and that he merely wished to clarify factual allegations and specify Defendant's duty and breach of those duties. Plaintiff's new paragraph 7 stated that an employee of Defendant had unlocked a courtyard exit door that should have been locked. Revised paragraph 8 states that Defendant's employees ran after Plaintiff when he ran through the unlocked door into the courtyard. Amended paragraphs 16 and 17 state that Defendant breached its duty to Plaintiff by failure (1) to provide adequate staff and services; (2) to secure doors that should have been secured after

opening; (3) by leaving a key to open a secured door in the secured door; (4) by giving a key to a

resident without assuring that the door was again secured; (5) by chasing and/or running after

Plaintiff; and (6) by placing Plaintiff in a position that could reasonably cause injury.

Defendant filed its Response to Plaintiff's motion on August 3, 2006, stating that

Plaintiff's request for amending his Complaint was futile since his ordinary negligence claim

still resounded in a medical malpractice claim. (Docket No. 14). As a result, although Plaintiff

filed his Complaint within the two (2) year Michigan statute of limitations for medical

malpractice, Plaintiff failed to include an Affidavit of Merit with the Complaint as required by

Michigan law. The Court referred Plaintiff's Motion to Amend to the Magistrate Judge on

August 14, 2006.

The Magistrate Judge denied Plaintiff's Motion to Amend on October 20, 2006. (Docket

No. 27). The Magistrate Judge concluded that the amendment to Plaintiff's Complaint would be

futile since he found that Plaintiff's ordinary negligence claims were couched a medical

malpractice action. Additionally, the Magistrate Judge found that Plaintiff's failure to file an

Affidavit of Merit in this case, pursuant to Michigan law, in a case alleging medical malpractice,

procedurally barred his claim. Plaintiff filed his Objections to the Magistrate Judge's Order on

October 30, 2006. (Docket No. 28).

## II.    ANALYSIS

### A.    Standard of Review

#### 1.    Magistrate Judge's October 20, 2006 Order Denying Plaintiff's Motion to Amend the Complaint

4

In reviewing the order of a magistrate judge denying leave to amend a complaint because of futility, a district court reviews that determination *de novo*. *Midkiff v. Adams County Regional Water Dist.*, 409 F.3d 758, 771 (6th Cir. 2005).

2.   Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine

5

issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

Since the Court reviews the Magistrate Judge's Order *de novo* and the issues in front of the Magistrate Judge are intertwined with the issues on summary judgment, the Court addresses Plaintiff's Objections and Defendant's Motion for Summary Judgment concurrently.

### B.      Ordinary Negligence versus Medical Malpractice

Defendant urges the Court to recognize that despite Plaintiff's characterization of the facts of the case, involving improperly secured doors and "running after" Plaintiff, Plaintiff's case involves a medical malpractice claim. Plaintiff responds that his claim does not sound in medical malpractice because the facts involve questions involving common knowledge and

experience of the jury, rather than issues of medical judgment. Plaintiff essentially argues that Defendant breached its duty to secure the door and then chased Plaintiff as he ran through the door, resulting in his tripping on a light post. According to Plaintiff, evaluating these facts requires no medical judgment or skill. (Pl. Resp. 15-16). Plaintiff also argues that Plaintiff's situation is analogous to that in the Michigan Court of Appeals' case *Jackson v. Harper Hosp*., No. 262466, 2006 WL 2613599 (Mich. Ct. App. Sept. 12, 2006) (unpublished).

The Michigan Supreme Court has set forth the two defining characteristics of a medical malpractice claim: (1) medical malpractice can only occur within the course of a professional relationship; and (2) claims of medical malpractice necessarily raise questions involving medical judgment. *Bryant v. Oakpointe Villa Nursing Ctr., Inc.*, 471 Mich. 411, 422 (2004). After ascertaining that the claim involves a professional relationship, a court must determine whether the plaintiff's claim raises a question of medical judgment requiring medical expert testimony or whether it states facts within the realm of a jury's common knowledge and experience. *Id*. at 423.

Defendant is a licensed health care facility under Michigan law, and the parties agree that the claim arose out of a professional relationship between Defendant and Plaintiff. (Pl. Resp. 14).

For the purposes of evaluating whether amendment is futile, it is necessary to review the allegations in the First Amended Complaint and whether they state medical malpractice or ordinary negligence claims. Plaintiff contends in his Complaint that Defendant failed to provide adequate staff and services to prevent his injury, failed to exercise proper care in regards to the door to the courtyard, was negligent in chasing after Plaintiff, and placed Plaintiff in a position

that could reasonably cause danger. The Court must determine whether these are issues that require expert testimony on medical issues. *Bryant*, 471 Mich at 426-29.

In *Bryant*, the plaintiff's decedent, suffering from multi-infarct dementia, diabetes, and several strokes, was a resident at a nursing home and required round-the-clock care for all of her needs. *Id*. at 415. Since the decedent had no control over her locomotive skills, the decedent's medical director approved several devices intended to restrict her mobility: (1) bed rails to keep her from sliding out of the bed, (2) a restraining vest that prevented her from moving her arms and subsequently slide, and (3) wedges or bumper pads placed on the mattress to keep her from coming in contact with the bed rails. *Id*. at 416. One day, several nursing assistants discovered the decedent resting very close to the bed rails and entangled in her restraining vest, gown, and bedsheets. *Id*. After untangling her, the nursing assistants informed their supervisors that the wedges were not sticking and that better care should be taken since the patients had the potential to be hurt or fatally injured; but nothing was done. *Id*. The very next day, the decedent was discovered with her lower body on the floor, her head and neck under the bedside rail, and her neck stuck between the rail and the mattress, preventing her from breathing. *Id*. at 417. The decedent was transported to the hospital but ultimately died of positional asphyxia. *Id*.

The plaintiff then filed a complaint alleging ordinary negligence on the following grounds: (1) failure to provide an accident-free environment; (2) failure to train the staff of potential asphyxia despite receiving warnings about specific risks with bed rails; (3) failure to take steps to protect the decedent after the first incident; and (4) failure to inspect the bed equipment for risk of potential asphyxia for the decedent. *Id*. at 418.

The court held that all of the alleged instances of negligence sounded in medical malpractice rather than ordinary negligence, except for negligently failing to protect the decedent after the first incident. The plaintiff had argued that the defendant had notice of the risk of asphyxiation, yet did nothing to rectify it. *Id*. at 430. The court stated:

> This claim sounds in ordinary negligence. No expert testimony is necessary to determine whether defendant's employees should have taken some sort of corrective action to prevent future harm after learning of the hazard.
> .      .        .        .
> No expert testimony is necessary to show that the defendant acted negligently by failing to take any corrective action after learning of the problem. A fact-finder relying only on common knowledge and experience can readily determine whether defendant's response was sufficient.

*Id*. at 430, 431.

In *Jackson*, the plaintiff sued a hospital for ordinary negligence for the hospital staff's failure to re-secure her bed-rails after checking her vital signs. 2006 WL 2613599, at *1. The plaintiff filed a complaint against the hospital asserting: (1) failure to train or supervise employees in the proper use of safety precautions, (2) failure to insure that safety railings are re-secured after its patients are examined by hospital staff, and (3) failure to insure the safety and security of all patients being treated or examined. *Id*. at *3.

Considering the plaintiff's failure to train claim, the court recognized that "[i]n order for the fact-finder to analyze this claim, it would be required to be advised of the proper safety precautions and whether the safety precautions employed vary based on the individual patient care involved." *Id*. However, the court found that the plaintiff's second allegation properly stated an ordinary negligence claim.

> However, this issue does not necessarily raise a question involving medical judgment, but rather, comes within the common knowledge and experience of the jury. . . . It should be

9

> noted that plaintiff does not allege that her medical condition required that specialized bed railings or other restraints be imposed based on her medical condition. Rather, plaintiff merely alleges that it was error to fail to return the bed railings after a check of her vital signs.

*Id*. at \*4. The court dismissed the plaintiff's final claim of failure to protect all patients as a subterfuge for a strict liability claim.

The central idea to both decisions was that the plaintiffs made a showing that the defendants were on notice of a problem and acted negligently by failing to take "any corrective action." The courts concluded that even when the plaintiff enjoyed a professional relationship with the defendant, a jury could assess whether the defendants failed to take any action in light of a known risk.

In this case, Plaintiff's Amended Complaint states that Defendant had inadequate staffing and services to prevent the injury, that Defendant negligently failed to secure the courtyard door, and that generally placed Plaintiff in a position of danger. In regards to the inadequate staffing and services claim, there is no evidence in the record to support this claim. Furthermore, the Michigan Supreme Court has suggested that decisions involving the adequacy of staffing raise questions of medical judgment. *Dorris v. Detroit Osteopathic Hosp. Corp.*, 460 Mich. 26, 46-47 (1999).

Here, Plaintiffs have produced evidence that Defendant was aware of the general risks involved of not securing the courtyard door and the specific risk that Plaintiff had an inclination to attempt to elope on the day of the incident. Plaintiff attaches testimony that the nursing home kept the courtyard door locked when the weather was cold. (Dep. Henricks 24:2-10; Dep. Campbell 17:19-24). However, assuming the weather was agreeable, the nursing home allowed

10

residents to go outside when they wished. (Dep. Henricks 23:3-6). The nursing home's procedure was to have a caregiver allow individual residents to go into the courtyard with some kind of supervision. (Dep. Campbell 20:5-25, 22:1-12; Dep. Rodgers 26:6-20). The caregivers were also not supposed to give the keys to the residents or leave the keys in the door lock. (Dep. Bryan 14:4-11; Dep. Campbell 21:5-13).

Regarding Defendant's knowledge of the particular risk to Plaintiff, Plaintiff produces several statements from Defendant's employees included in the Report of the State of Michigan's Family Independence Agency (May 11, 2004 Special Investigation Report). (Pl. Supp. Br. Ex. B). Cecilia Branch, a Resident Care Assistant, reported that during his brief stay at Defendant, Plaintiff refused to do tasks such as showering and that family members would come to the facility to encourage Plaintiff to complete the tasks. She also indicated that Plaintiff would walk all night, was often moody during the day going into other resident's room, and demonstrated some agitation during the day. (*Id.*). Barbara Campbell, the Resident Services Supervisor, indicated that since Plaintiff was one of the more capable residents, she had concerns that he could remember the code to the main lobby and escape. (*Id.*). Campbell also noted that on the day of the incident Plaintiff was agitated most of the day. (*Id.*). Because of Campbell's concerns, the staff members assigned to work with Plaintiff were asked to monitor him closely. (*Id.*). She testified at her deposition that she was aware that Plaintiff walked with a limp and could not run "in a typical sense of running." (Dep. Campbell 39:6-17).

Plaintiff also argues that Defendant's staff did not have any special training to deal with patients suffering from Alzheimer's disease or dementia, in order to show that medical judgments were not involved in Plaintiff's incident. (Dep. Branch 8:13-25, 9:1-4; Dep. Rodgers

11

41:1-25, 46:9-17). Defendant responds that under further questioning at their depositions Defendants' staff testified that they underwent training from nurses in working in a facility for Alzheimer's patients. (Dep. Rodgers 40:13-25, 41:1-25, 42:1-8; Dep. Stromer 10:19-25, 11:1-14; Dep. Branch 23:6-23). Although it seems that the implicated members of Defendant's staff were not "licensed health officials," as contemplated under Michigan law, it is clear from the testimony that Defendant's staff had at least some training to deal with daily interactions with patients. Michigan law states that decisions to implement certain policies and procedures can, in themselves, involve medical judgment, regardless of level of medical training of individual employees. *See Kuznar v. Raksha Corp.*, 272 Mich. App. 130, 2006 WL 2423426, *3 (2006) (noting that the negligent acts of unlicensed agents or employees of licensed health facilities may be subject to medical malpractice claims).

The Court notes that Defendant's interpretation of *Bryant* and *Jackson* sweeps too broadly. Michigan law has recognized that a trier of fact can evaluate, even in a medical context, claims of negligence where a defendant had particularized knowledge of a known risk, and failed to take corrective action. Plaintiff has produced evidence that Defendant's employees were aware, around the date of the incident itself, of the likelihood of an attempted escape from the nursing home and were thus instructed to monitor Plaintiff more closely.

The fact that Plaintiff had Alzheimer's disease does not necessarily transform the issues related to Defendant's alleged negligence into questions of medical judgment. Other courts considering similar issues have stated that even though limited medical testimony may be required on the issue of (1) a plaintiff's capacity for "self-control" to demonstrate a defendant's negligence in its "supervision or custodial care" or (2) failure to protect a plaintiff from a known

danger, the need for that limited testimony, by itself, is insufficient to translate an ordinary negligence claim into medical malpractice claim. *See Reiss v. The Stamford Hosp.*, No. 010276557S, 2005 WL 2009560, *8-9 (Conn. Super. Ct. Aug 2, 2005) (unpublished); *see also Beauvais v. Connecticut Subaccute Corp. of Waterbury*, No. 990270390S, 2000 WL 1657845 (Conn. Super. Ct. Sept. 29, 2000) (unpublished) (finding that the plaintiff properly stated an ordinary negligence claim, where the defendant's staff had notice that a particular Alzheimer's patient had a tendency to become agitated and violent and subsequently struck another patient).

Therefore, the Court holds that Plaintiff has properly stated a claim for ordinary negligence and DENIES Defendant's Motion for Summary Judgment based upon the statute of limitations for a medical malpractice action.

## III.    CONCLUSION

For the foregoing reasons, the Court:

(1)    **REVERSES** the Order of the Magistrate Judge Denying Plaintiff's Motion for Leave to File an Amended Complaint;

(2)    **GRANTS** Plaintiff's Motion to File an Amended Complaint;

(3)    **DENIES** Defendant's Motion for Summary Judgment.


**SO ORDERED.**


                                     s/Paul D. Borman
                                     PAUL D. BORMAN
                                     UNITED STATES DISTRICT JUDGE

Dated:  January 22, 2007

CERTIFICATE OF SERVICE

13

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on
 January 22, 2007.


                                            s/Denise Goodine
                                            Case Manager